Edward L. **BLANSCET**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare, Defendant.

No. 1598.

United States District Court
W. D. Arkansas,
Fort Smith Division.

June 10, 1963.

Jack Yates, Ozark, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Edward L. Blanscet, to review a final decision of the defendant Secretary denying the plaintiff's application for a period of disability and disability benefits as authorized by the Social Security Act, as amended, 42 U.S.C.A., §§ 416(i), 423. The action was filed in this court on June 7, 1961, after the plaintiff had exhausted all administrative procedures. The case was submitted to the court on cross motions for summary judgment, and on January 19, 1962, the court denied both motions and remanded the case to the Secretary of Health, Education and Welfare for further proceedings and additional evidence as to the employment opportunities or the lack of them available to a person of plaintiff's skills and limitations in the general area in which he resides, together with any other evidence the Secretary may be entitled to receive, including the explanation or clarification of specified discrepancies in the medical testimony and in the earnings record of the plaintiff. See Blanscet v. Ribicoff, (W.D.Ark.1962) 201 F.Supp. 257.

On June 5, 1963, Anthony J. Celebrezze was substituted as the party defendant by order of this court.

The supplemental transcript and opinion of the Appeals Council of the Social Security Administration, along with the defendant's amended answer was filed April 25, 1963. The Appeals Council affirmed the decision of the hearing examiner and held that the plaintiff was not entitled to a period of disability. No additional oral testimony is included in the supplemental transcript. However, additional medical reports were introduced by both parties, and additional written statements from the plaintiff and members of his family were likewise introduced, as well as a large number of statements from the plaintiff's former employers and co-workers and fellow members of his community.

Counsel for the plaintiff and for the Government have submitted additional memorandum briefs, and the case is now ready for disposition.

The basic facts established at the original hearing are not in serious dispute, and are discussed in detail in the court's prior opinion reported in 201 F.Supp. 257. The two discrepancies noted in the opinion, one as to certain medical testimony by Dr. Porter and the other as to the date that the plaintiff last met the special earnings requirements for a period of disability, have been clarified. As to the testimony of Dr. Porter relevant to the ultimate restriction on the activity of the plaintiff due to the degenerative intervertebral lumbar disc, it was the Doctor's opinion that the presence of such a physical condition, if not corrected by an operation, would limit his physical activity to light or sedentary work. As to the question of when the plaintiff last met the special earnings requirement, it was determined by the Appeals Council that the plaintiff last met the special earnings requirement for a period of disability and disability benefits on December 31, 1959.

The legal standards applicable to a case of this nature have been clearly and concisely set forth in a recent decision of the Court of Appeals for the Eighth Circuit, Celebrezze v. Bolas, 316 F.2d 498, and are set forth as follows beginning at page 500:

"1. Bolas, technically, has the burden of establishing his claim. * * * [Citing cases.]

"2. The Act is remedial and is to be construed liberally. [Citing cases.]

"3. The Secretary's findings of fact and the reasonable inferences drawn from them are conclusive if

they are supported by substantial evidence. The statute, § 205(g), 42 U.S.C.A. § 405(g), is specific. This is the limitation of judicial review of the Secretary's decision. [Citing cases.]

"4. 'Substantial evidence is more than a mere scintilla * * *.' It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. [Citing cases.]

*    *    *    *    *    *

"6. The determination of the presence of substantial evidence is to be made on a case-to-case basis. [Citing cases.]

"7. 'Where the evidence was in conflict, or subject to conflicting inferences, it is for the Appeals Council on behalf of the Secretary to resolve such conflicts.' [Citing cases.]

"8. The statutory definition of disability imposes the three-fold requirement (a) that there be a 'medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration'; (b) that there be an 'inability to engage in any substantial gainful activity'; and (c) that the inability be 'by reason of' the impairment. [Citing cases.]

"9. 'Substantial gainful activity' has been described:

" 'The activity in which a disabled claimant can be found to be able to engage must be both substantial and gainful and within his capacity and capability, realistically judged by his education, training and experience.' [Citing cases.]

" 'Such a determination requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful ac-

tivity is not enough if no reasonable opportunity for this is available.' [Citing cases.]

"10. The emphasis is directed not to the average man but to the particular claimant's capabilities. [Citing cases.]

"11. The word 'any' in the statute 'must be read in the light of what is reasonably possible, not of what is conceivable.' " [Citing cases.]

■ The first question to be determined is whether the plaintiff is afflicted with a medically determinable physical impairment which can be expected to continue for a long and indefinite period of time, and which is of such magnitude as to qualify him under the applicable statutes and regulations which have been heretofore set forth in this court's original opinion. In this connection, the additional medical testimony contained in the amended transcript, specifically the medical reports of Dr. Hundley, an orthopedist, and Dr. Padberg, a neurologist, both of whom are specialists practicing in Little Rock, Arkansas, and who have examined the plaintiff, confirms the court's conclusion in the original opinion that the plaintiff's affliction with degenerative intervertebral discs in the lumbosacral region and resulting back and leg pain is a medically determinable physical impairment of indefinite duration which existed during the period prior to December 31, 1959. The only dispute between Dr. Porter, whose medical report appears in the original transcript, and Drs. Hundley and Padberg, whose reports appear in the amended transcript, is concerned with whether the plaintiff should be subjected to a myelogram and whether he would benefit from corrective surgery. It is the conclusion of Drs. Hundley and Padberg that the results of the myelographic examination would not materially add to the diagnosis of the plaintiff's condition and that surgical treatment of plaintiff's back condition would not materially aid his rehabilitation. Otherwise, the conclusion of the court in the former opinion that any findings of the hearing examiner

to the contrary were not supported by substantial evidence is not altered by the medical testimony contained in the amended transcript.

██ Granted that the plaintiff is afflicted with a physical impairment, the next question is whether he is able to engage in substantial gainful activity within the provisions of the applicable statutes and regulations.

Although the original opinion contained a large number of citations and quotations of court decisions discussing the test of claimant's disability or inability to engage in any substantial gainful activity in general, and the burdens of proof on the claimant and on the Secretary with respect to the claimant's ability or inability to gain employment and the availability and unavailability of employment opportunities in particular, it is appropriate to restate two recent opinions which the court feels will aid in the final discussion of the instant case.

The court in the case of Randall v. Flemming, (W.D.Mich.1961) 192 F.Supp. 111, compiled a great number of decisions which had analyzed the requirements of the applicable statutes and regulations, and it summarized them as follows at page 123 of 192 F.Supp.:

"To summarize, the courts have generally agreed that the test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one, that is, what is reasonably possible in the light of the plaintiff's physical and mental capacities and his education, training, and experience. It is not necessary that the plaintiff establish the complete absence of any opportunity for substantial gainful employment; he need only establish that he has become disabled from employment in any work or vocation in which he could profitably seek employment in the light of his physical and mental capacities and his education, training, and experience. Furthermore, it is clear that a plaintiff need not be totally helpless or bed-ridden in order to be considered disabled under the Social Security Act."

In this connection the case of Ellerman v. Flemming, (W.D.Mo.1960) 188 F.Supp. 521, warrants consideration for its analysis of the relative burdens of proof. In Ellerman, Chief Judge Ridge said at page 527:

"Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently. Parfenuk v. Flemming, D.C.Mass.1960, 182 F.Supp. 532."

See, also, Hawkins v. Celebrezze, (W.D. Ark.1962) 210 F.Supp. 341; Sebby v. Flemming, (W.D.Ark.1960) 183 F.Supp. 450; Dunn v. Folsom, (W.D.Ark.1958) 166 F.Supp. 44.

As stated above, the main purpose of remanding the original case for the introduction of additional evidence was to fully develop any facts which would have a bearing on a decision of this particular aspect of the instant case. Whereas the original transcript was nearly devoid of any objective information as to the plaintiff's ability to engage in light or moderate work which would amount to any substantial gainful activity and type of employment opportunities available to him, the amended transcript contains an exhaustive and well-developed analysis both as to plaintiff's own capabilities and of the opportunities available to him in the general area in which he lives. Such information would have been of tremendous aid

to the court in its determination of the instant case as originally before it, and would have eliminated the necessity of remanding the case for the introduction of such additional evidence.

In short, the evidence contained in the original and amended transcripts presents the following employment picture as pertains to the plaintiff both before and after the end of his earnings period on December 31, 1959. In the two-year period immediately prior to termination of his employment as a coal miner in January 1959, the plaintiff and several partners worked a small coal mine which they had leased. From all accounts this line of work was extremely strenuous and carried on in cramped and confining areas. Plaintiff's partners and co-workers, who appear to be able-bodied men, were able to perform a larger share of the work than was the plaintiff, yet the plaintiff was still able to perform a good part of his share of the work, even though he began to complain of back and leg pains during this period. One of the partners quit before the others due to lack of income from this line of work, and at the time the plaintiff quit, his other partners and co-workers stated that their main reasons for quitting at the same time were the poor working conditions, hard work and lack of income.

The plaintiff was employed as a paint sprayer by General Electric Corporation from October 1955 to March 1956 in Houston, Texas, at a job requiring painting of small parts with a spray gun. He was classified as a helper in a sheet metal and fabricating unit; his work rating was average; his attendance was good; and he apparently left on his own accord.

In addition to his painting experience, the plaintiff has worked in grocery stores on two recent occasions. In the middle of 1959 he was employed by a grocery store in Houston, Texas, for a period of one or two weeks. His duties consisted of checking out groceries, making change, packing the groceries, and watching over the store in general. He did not miss any work, but testified that he was fired because he was not fast enough. He was also employed on a part-time basis by the Minature Market in 1961 in Altus, Arkansas, during a period from January to October on Fridays and Saturdays, usually working about six hours a day, boning meat, grinding hamburger and waiting on customers. The plaintiff apparently quit on his own accord because he did not feel that he could do the work.

Since 1959 when the plaintiff quit working the coal mines, the bulk of his work activity has been carried on in connection with his own farm. During the past three years he has performed various chores amounting to light to moderate work in his house and around the farm to the extent that he has helped with housework, has raised and fed cattle, has worked in his garden, has loaded and unloaded sacks of feed for his cattle, and has driven the cattle to market in Fort Smith in his pickup truck, a distance of approximately 45 to 50 miles. In addition, he has worked for his brother in the summer of 1960 driving a tractor and raking hay for about three weeks, and he regularly drives a Sunday school bus for his church.

The facts as developed by the medical reports and plaintiff's own testimony show that, although the plaintiff is afflicted with a medically determinable physical impairment of indefinite duration which precludes him from engaging in any activity which includes heavy lifting, bending or standing without suffering pain, yet the hearing examiner's conclusion that the plaintiff is able to engage in substantial gainful activity, both in connection with his farm and with outside employers, is supported by substantial evidence. The evidence is clear that the plaintiff is capable of indulging in light to moderate work activity, and that he is capable of working at jobs that require only observational or manipulative ability and no training or education, which activity seems to be limited only by the plaintiff's lack of perseverance and endurance.

Plaintiff contends that his physical impairment amounts to a disability because

in his present condition he has been denied employment with a road contractor as a night watchman and that due to the nature of the area in which he lives, there is a paucity of light and sedentary-type jobs which would amount to a full-time job other than the type of work he has done in grocery stores and on his farm. In the original opinion, Title 20, C.F.R., Sec. 404.1502(c), was quoted, which takes into consideration the type of individual in the plaintiff's situation who has a limited education, has performed heavy manual labor most of his life, has reached middle age, and cannot continue his former mode of employment as being more eligible for disability than wage earners in other categories. However, this allowance is offset in the same subsection when such an individual has continued to work in less arduous jobs or has the training and past work experience which qualifies him for substantial gainful work in another occupation consistent with his impairment, either on a full-time or a reasonably regular part-time basis. As set out above, it is evident that this particular subsection would apply to the plaintiff in its entirety, thus lending substance to the Secretary's decision in denying disability. Furthermore, the evidence shows that the plaintiff was denied employment with the road construction company because of his age and that the shortage of employment opportunities for a person of his ability was due to the economic character of the community in which he lives. These particular situations are also included in 20 C.F.R., Sec. 404.-1502(b), which states, inter alia:

"* * * Evidence of unsuccessful efforts by the individual to secure or continue to do work is not of itself controlling in determining whether or not the individual has the capacity to engage in any substantial gainful activity. The physical or mental impairment must be the primary reason for the individual's inability to engage in substantial gainful activity. Where, for instance, an individual remains un-employed for a reason or reasons not due to his physical or mental impairment but because of the hiring practices of certain employers, technological changes in the industry in which he has worked, or local or cyclical economic conditions, such individual may not be considered under a disability as defined in § 404.-1501(a) and (b) (1)."

The fact that the plaintiff has engaged mainly in part-time work since the onset of his physical impairment both in grocery stores and on his farm is not a conclusive factor in evaluating his disability, which depends upon his inability to perform substantial gainful activity as heretofore defined. Title 20, C.F.R., Sec. 404.1502(h) (Supp.1963). states, inter alia:

"* * * In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment."

It is true that, as stated in the case of Ellerman v. Flemming, supra, at page 527 of 188 F.Supp., "[i]f there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce such evidence from which a finding can be made that he can do some type of work; actually, not apparently." However, in the instant case the defendant Secretary has shown that not only has the plaintiff engaged in light to moderate work activity since he has quit working in the coal mines, which, in the context of the operation of his farm, at least, would conform to the definition of substantial gainful activity, but that there are also various types of employment available to one of the plaintiff's ability in the general area in which he lives. It would appear that the defendant has sustained his burden and has supported his

findings that there is lack of disability in this case by substantial evidence.

As stated in the case of Celebrezze v. Bolas, supra, at page 507 of 316 F.2d:

"But we conclude that any such burden which might be said to be upon the defendant here has been met. It is not the duty or the burden of the Secretary to find a specific employer and a specific job for the claimant. Some effort and some ingenuity, albeit within the range of his capacity, remains for him to exercise."

A study of the entire record convinces the court that the findings and inferences of the Secretary are supported by substantial evidence. Therefore, an order is being entered today granting the defendant's motion for summary judgment and dismissing the plaintiff's complaint.