Clistie Bell THOMAS, Appellee,

v.

Anthony J. CELEBREZZE, Secretary of the Department of Health, Education, and Welfare, Appellant.

No. 9215.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 22, 1964.

Decided April 15, 1964.

Lawrence R. Schneider, Attorney, Department of Justice (John W. Douglas, Asst. Atty. Gen., and Alan S. Rosenthal, Attorney, Department of Justice, and John C. Williams, U. S. Atty., on brief), for appellant.

James B. Stephen, Spartanburg, S. C. (Harvey W. Johnson, Spartanburg, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and MICHIE, District Judge.

SOBELOFF, Chief Judge.

This action was brought by the claimant, Clistie Bell Thomas, against the Secretary of Health, Education, and Welfare, pursuant to section 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g), to obtain judicial review of a final decision of the Secretary denying her application for disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C.A. §§ 416(i) and 423. On May 20, 1963, the District Court entered an order reversing the Secretary's decision, and the Secretary appeals.

## I.

The prescribed standard of review, found in section 205(g) of the Act, 42 U.S.C.A. § 405(g), is as follows: "* * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *." Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize "the record as a whole" to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958); 4 Davis, Administrative Law (1958) § 29.02, pp. 118–126. If they are, they must be upheld; but if,

for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. Park v. Celebrezze, 214 F.Supp. 153 (W.D.Ark. 1963); Corn v. Flemming, 184 F.Supp. 490 (S.D.Fla.1960). In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision "with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g).

Unlike labor cases where appeals from the National Labor Relations Board are taken directly to the court of appeals, in Social Security cases, judicial review is initially in a district court, from which a further appeal may be taken to a court of appeals by either party. The substantiality of the evidence to support the Secretary's findings is the issue before each court. Farley v. Celebrezze, 315 F.2d 704 (3d Cir. 1963); Ward v. Celebrezze, 311 F. 2d 115 (5th Cir. 1962).

## II.

The record before us discloses that the claimant was born in 1909, that she did not complete more than the second grade of elementary school and has never received any specialized vocational training. For approximately 35 years, from the time she was 14, she worked in the weave room of textile mills in South Carolina. Her only work experience has been in such mills. In 1959 she underwent a radical surgical operation for breast cancer in which her left breast was removed. She has not worked since, although the record is uncontradicted that as far as can be medically determined the cancerous condition itself has been removed.

Her work in the weave room fell into two categories—weaver and battery filler. Weaving requires one to bend over a loom, pull a lever and draw in broken threads, while filling batteries requires one to transfer bobbins of thread manually from a supply bar to a roller cart, push the cart around the

weave room and fill each battery with some 30 to 40 bobbins as it becomes empty. In the weave room of her last employer there was one battery for each loom and about 90 looms. The claimant stated that battery filler was "[p]robably the easiest job in the weave room * * * from the standpoint of requiring physical stamina and activity, but one engaged in this job also has to be fast and able to use hands, arms and shoulders."

Mrs. Thomas complains that as a result of her operation she is extremely uncomfortable when on her feet and that the discomfort becomes unbearable if she walks a block or two. She also states that she is unable to use her arms or shoulders with any degree of dexterity— and the use of both arms is necessary in the work—and that her left side gives her such pain when she sits for extended periods that she must lie down to obtain relief. In the request for a hearing which she filed with the Secretary, she said:

> "I am just sick all the time. I have a smothering and can't sleep at night and pain & swelling in my shoulder, neck and arm all the time. The place where my breast was removed has not healed."

The medical testimony submitted to the Secretary consisted of reports of a number of doctors. Dr. Sam O. Black, Mrs. Thomas' physician, in a report dated May 12, 1960, found that Mrs. Thomas had a "considerable edema of the left arm from the axilla to the hand" and that she had "considerable limitation of motion of this [left] arm." He concluded that it was "inconceivable to me that she is able to do any labor whatsoever." In a May 30, 1960, report he characterized the disability of her left arm as "severe," and on October 20, 1960, he commented on the continued "limitation of motion of the shoulder due to loss of pectoral muscles." He also noted that she was overweight and "obviously quite nervous."

An orthopedic surgeon, Dr. Frank H. Stelling, observed the existence of a "brawny edema of the left arm and fore-

arm" and a "restriction of motion in the shoulder." His opinion and recommendations were as follows:

> "This lady has a *chronic* edema, lymphatic stasis and venous stasis of the left upper extremity, post mastectomy and lymph dissection of the axilla. She has also some fibrous ankylosis of the left shoulder due to chronic disuse and protection.
>
> "*I think that it is difficult for this lady to use her left arm constantly for anything requiring lifting and moving over long periods of time.* Her hand is quite good and she can use her hand to some extent. *This condition is permanent.* There are certainly many things this lady could do from the standpoint of her physical abilities so that one would not consider her totally disabled from a physical standpoint; however, this lady has only a second grade education and has worked only as a mill worker all of her life, doing heavy labor in the weave room. *I am certain she is not able to do such work now,* and with her arm as it is, it would be very difficult for her to find other work with her lack of education." (Our italics.)

Another physician, Dr. D. H. Smith, in a March 23, 1962, report, restricted Mrs. Thomas' activity to "very light house work" and described her condition as "static."

Dr. John Keith, an orthopedic surgeon, in his report of June 4, 1962, said that Mrs. Thomas' left arm was more puffy than the right but that she was able to raise a book, open and close a safety pin and grip a hammer fairly well. His diagnosis was: "(1) Residual limited motion of the left shoulder * * * (2) Degenerative arthritis of the dorsal spine."

The report least favorable to Mrs. Thomas was made on June 20, 1962, by Dr. C. Warren Irvin, Jr., an internist. He found Mrs. Thomas to be an "obese, worried appearing, obviously depressed female who does not appear acutely ill."

It was his impression "that Mrs. Thomas' predominant problem is that of a depression state and that she does not have residual physical explanation for the *majority* of her symptoms." (Our italics.) He found that the claimant's left arm was larger than the right and that she did have some "arthritic changes in her vertebrae which could explain some of her pain in her neck and arms" but he considered these a minor problem and suggested that aspirin would provide relief for the arthritic pains.

In addition to the medical evidence and Mrs. Thomas' description of her disability, the personnel manager of her last employer expressed an opinion, based upon his own observation and upon medical reports furnished in connection with Mrs. Thomas' group life insurance, that she was not "physically capable of performing any of the above duties [weaver or battery filler] nor any other job in a textile plant."

 The statute, 42 U.S.C.A. § 416 (i), defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." While it casts upon the claimant the burden of proving that such a disability exists, it is not expected that this burden shall be carried to a point beyond a reasonable doubt. Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C. 1962). There really are two steps to a finding of disability: first, a finding of a "medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration" and, second, a finding that the impairment in fact causes an inability to "engage in any substantial gainful activity * * *." Butler v. Flemming, 288 F.2d 591, 593 (5th Cir. 1961). But in regard to the second step, the abstract "average" man is not the criterion. The inquiry must be directed to the particular claimant; not to people in general or even claimants in general. Pearman v. Ribicoff, 307 F. 2d 533 (4th Cir. 1962).

 In Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), Judge Bell, writing for this court, listed four relevant elements of proof: (1) Medical data, (2) Expert medical opinion, (3) Testimony as to the claimant's subjective pain, and (4) Claimant's age and vocational background. As we read the present record, using Underwood as a guide, we conclude that the evidence overwhelmingly demonstrates the existence of a disability within the meaning of the Act, and that the Secretary's finding that the claimant is capable of returning to her old job is without substantial evidence.

The fault we find in the Secretary's conclusion is not in his statement of the rule of law but in his application of that rule to the particular facts of this case. The uncontradicted evidence is that Mrs. Thomas has lost her pectoral muscles, is experiencing pain, and has undergone some degree of arthritic change. The medical reports which mention her psychological condition agree that she is depressed and nervous. And, with the exception of the internist, Dr. Irvin, the doctors agree that as a result of her cancer operation Mrs. Thomas' use of her left arm and shoulder is limited. In sum, the objective medical findings clearly disclose a medically determinable impairment.

 The evidence of the effect of this impairment on Mrs. Thomas' ability to engage in substantial gainful employment is equally conclusive. It demonstrates that she is unable to return to her old job. In addition there is no indication that the impairment is remediable; all of the evidence on the subject is to the contrary. See Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962); Allison v. Ribicoff, 307 F.2d 379 (4th Cir. 1962). While we do not look to the physicians' opinion testimony to resolve the ultimate issue—disability within the meaning of the statute—their expert opinions, referred to above, on Mrs.

Thomas' inability to use her left arm and shoulder for continuous periods of time are relevant to show her incapacity. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Dr. Keith's observations that Mrs. Thomas was able to raise a book and open and close a safety pin do not lead to a contrary conclusion. Certainly the ability to perform such simple acts once does not necessarily imply the ability to perform them over extended periods of time. In fact Dr. Keith's diagnosis specifically noted the "[r]esidual limited motion of the left shoulder."

Dr. Irvin stands alone in the opinion that Mrs. Thomas is capable of returning to her old job. Apart from the above-noted distinction between medical judgment as to physical condition contrasted to opinion on the ultimate issue of "disability," it is noteworthy that even Dr. Irvin finds a medically determinable impairment. He is at odds with the other reports only in that it is his opinion that the impairment is slight. If his report were the only evidence, the Secretary might have been justified in finding as he did; however, the entire record, as fully developed, leads only to a contrary conclusion.

But the Secretary finds that, even if the claimant could not do the work of a weaver or battery filler, the only work she had ever done in her entire work history, there are other jobs she might perform. To reach this conclusion he consulted The Dictionary of Occupational Titles, a document giving capsule descriptions of 22,000 jobs. This approach is unpersuasive. Stancavage v. Celebrezze, 323 F.2d 373 (3d Cir. 1963). The claimant has, we hold, demonstrated the requisite physical limitation, and her age, limited education and restricted work history lead to the conclusion that the prospects for retraining and employment are nonexistent. Cochran v. Celebrezze, 325 F.2d 137 (4th Cir. 1963); Woodson v. Celebrezze, 325 F.2d 479 (4th Cir. 1963).

Certainly it is not necessary that she, or any other claimant, be bedridden to come within the statute's provisions. Neither is she required to sell apples, Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960), nor "by the use of a catalogue of the nation's industrial occupations * * * go down the list and verbally negative [her] capacity for each of them or their availability to [her] as an actual opportunity for employment." Butler v. Flemming, 288 F.2d 591, 595 (5th Cir. 1961); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Where the statute refers to "any substantial gainful activity" the word "any" must be read in light of what is reasonable and not of what is merely conceivable. Klimaszewski v. Flemming, 176 F.Supp. 927, 931–32 (E.D.Pa.1959).

The claimant is not required to meet every remote possibility which may be conjured up by an active imagination. The availability of the jobs mentioned by the Secretary is at best speculative. We repeat the emphasis recently expressed for this court by Judge Butzner in McDaniel v. Celebrezze, 331 F.2d 426 (4th Cir. 1964), that "reviewing courts must carefully evaluate this type of evidence in determining whether there is substantial evidence in the record taken as a whole to support the decision of the Secretary."

It is the duty of the Secretary to protect the public funds from malingerers; but where, as here, the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing some one of the "non-physical, observational" jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation. Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant.

Affirmed.