James W. BATES, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 3036.

United States District Court
W. D. South Carolina,
Greenville Division.

July 22, 1964.

John Bolt Culbertson, Greenville, S. C.,
for plaintiff.

John C. Williams, Spartanburg, S. C.,
for defendant.

HEMPHILL, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education, and Welfare.

There are two issues before the Court: is the plaintiff entitled to "disability" and/or disability insurance benefits; and, if he is found "disabled", did he become "disabled" before his five-year cutoff date,[1] September 30, 1958?

On page 6 of the Record, the Hearing Examiner has cleared up the second issue as to coverage succinctly:

"Claimant's wage record shows that he had quarters of coverage for Social Security purposes in most of the calendar quarters up to and including the calendar quarter ending September 30, 1953, with no earnings posted thereafter. From this evidence, the examiner finds that claimant met the special earnings requirements of the statute for disability purposes in the quarter of alleged onset of disability, the third quarter of 1953, and continued to meet them through the calendar quarter ending September 30, 1958."

The remaining issue is whether or not plaintiff's disability commenced before September 30, 1958 and continued until the filing of his application on September 22, 1960. The Secretary has ruled that plaintiff was not so "disabled", and this action is brought on the theory that the Secretary's determination is not supported by "substantial evidence". The only basis the Court would have to reverse the Secretary's determination is that it is not supported by "substantial evidence". Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

The record reveals that plaintiff was born in 1901 and had a third grade elementary education. He worked for twenty-eight years as a "box pusher" in a textile bleachery, where he pushed boxes of cloth from place to place in the plant. This is essentially the only type of work plaintiff has ever done. Plaintiff testified that he "ain't worked a bit since 1953". Relevant portions of the record reflect the following colloquy between plaintiff and his counsel:

"Q. Are you under medication?

"A. Yes.

"Q. Are you under constant medical care?

"A. Yes.

"Q. How often do you take medicine?

"A. Four times a day.

"Q. Do you do any type work?

"A. No.

"Q. Can you hoe a garden?

"A. No.

"Q. Do you clean up the house.

"A. No.

   *    *    *    *    *    *

"Q. Just what is your feeling and condition?

"A. I just can't get my breath. I sit in a chair; for the last six weeks I smother.

   *    *    *    *    *    *

"Q. * * * Is there any kind of work you can do?

"A. I go to the mail box, and have to sit down before I get back. * * * I just can't do anything; I tried to pick up chips, and gave out.

"Q. Do you have any kind of discharge from your private parts, any bloody discharge of mucous.

"A. Sometimes I do.

   *    *    *    *    *    *

"Q. Are you able to engage in normal sexual relations?

"A. No.

"Q. How long has it been since you've been able to do that?

"A. I don't know how long."

---

1. See Section 216(i) (3) (B) of the Act, 42 U.S.C. § 416(i) (3) (B).

The following colloquy was between plaintiff and the Hearing Examiner:

"Q. * * * So apparently there is no question but that you have hypertension.

"Q. * * * As I understand it, the belief you have that you do have heart trouble is because you have shortness of breath on exertion. Is that correct?

"A. Yes.

"Q. How far can you walk without getting short of breath?

"A. I walked across over yonder, and you seen the shape I was in.

\* \* \* \* \* \*

"Q. When did this shortness of breath start?

"A. Ever since 1953; it has gradually been getting worse.

"Q. Do you have angina pains around the heart?

"A. Yes, I had one a while ago.

"Q. Do you have those when you have been sitting down or after you have been exerting?

"A. Most of the time when I have been walking.

"Q. How far can you walk before you have pain around your heart?

"A. I can't walk up steps at all, just down the street.

"Q. Do you have pain when you walk up steps?

"A. Yes.

"Q. And also when you walk for some distance on level ground?

"A. I can't walk any distance."

The record contains considerable medical evidence, and to some extent there is a conflict. The essence of the medical evidence reflects as follows: Dr. Hugh Smith reported in February 1956 that he first saw plaintiff in August 1953 and had not seen him since October 1953. He said that plaintiff had an onset of jaundice in August 1953 and that his diagnosis was "chronic biliary cirrhosis". There were clinical findings of an enlarged liver, icterus index of 75, cephalin flocculation 4+ (after 24 hours), 4+ bilirubin in the urine, and white cell count of 12,500. Treatment was had and plaintiff's liver subsided somewhat in size.

Dr. Stanley F. Coleman reported in February 1956 that plaintiff had nausea, vomiting, swelling of the stomach, and weakness for the past two years. Dr. Coleman diagnosed plaintiff's impairment as severe cirrhosis of the liver, "which would continue for the rest of the patient's life." Subsequent reports indicated plaintiff had weakness, mild edema of the lower legs, and shortness of breath.[2] Dr. Coleman in August 1956 noted a weight loss of 43 pounds and impairment of general body vigor, saying that the cirrhosis was "moderate", but eight months later he said it was advanced. He advised plaintiff not to work and indicated that plaintiff was "not able to work and never will be."

In October 1960 Dr. Coleman stated that he diagnosed plaintiff's impairment as: (1) chronic, hypertensive cardiovascular disease, with decompensation; (2) cirrhosis of the liver; (3) blind left eye.[3] He noted symptoms of vertigo, headache, irregular heart, smothering, and cough. Slight exertion resulted in dyspnea (difficult or labored breathing) and angina. Blood pressure was 169/110.

In 1960 Dr. Freeman continued to note the cirrhosis of the liver, hypertension, emphysema, bronchitis, and chronic cardiac disease. He stated that plaintiff had exertional dyspnea and some dyspnea at rest. In 1961 Dr. Freeman filed a report, which, *inter alia*, noted that plaintiff has "enough liver function left to maintain

---

2. The above seems to indicate the classic signs of cirrhosis. See Harrison, et al., Principles of Internal Medicine (4th Ed. 1962), pp. 1686-7.

3. There was testimony that plaintiff sustained a severe eye injury in 1956.

himself on a *sedentary* basis." (Emphasis added). He repeated the previous diagnosis and indicated that the prognosis was not too good.

In the course of its investigation, the Bureau had sent plaintiff to Dr. Robert R. Stanley in February 1957. Dr. Stanley examined plaintiff one time without consulting plaintiff's personal physicians. Dr. Stanley concluded, essentially, that plaintiff was within normal limits, saying *inter alia*, that there was no laboratory evidence of liver disease. He opined that the plaintiff had a "neurotic personality", and stated that "this patient has no valid reason for complete disability". (Of course, the latter determination is outside his province, as it is a conclusion of law. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Plaintiff was also sent to Dr. Everett B. Poole for an examination in November 1960. He was instructed to make cardiac and pulmonary evaluation of plaintiff, and also liver function tests. Dr. Poole, who made his diagnosis without consulting plaintiff's family physician, was of the opinion that plaintiff's dyspnea was more the product of anxiety than something organic. He felt there was no organic heart disease, but did note some arterial hypertension. Dr. Poole felt that the problem of cirrhosis of the liver was largely inferential, and that it had not progressed to serious failure and was not a major problem.

The question before this Court is: is the finding of the Secretary supported by substantial evidence? As the Fourth Circuit Court of Appeals recently made quite clear in Thomas v. Celebrezze:

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance. * * * The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. * *

If his findings are supported by substantial evidence, the courts are bound to accept them. * * * In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. * * * If they are, they must be upheld; but if, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the Secretary. * * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision * * *." (Citations omitted.) 331 F.2d 541, 543.

The issue before this Court is whether or not there is substantial evidence to support the Secretary's findings. Ibid.

The Hearing Examiners report indicated as follows: "It must be established by medical evidence, and when necessary, by appropriate medical tests, that a claimant's impairments have resulted in such a lack of ability to perform significant functions, such as moving about, handling objects, hearing or speaking * * * that he cannot, with his training, education, and work experience, engage in *any* kind of substantial gainful activity." (Emphasis in original.) The statement by the Hearing Examiner is a correct recitation of the applicable law, but there is a great error in his emphasis. A plaintiff does not have to be bedridden to come within the provisions of the Act, nor would he be required to sell peaches. Thomas v. Celebrezze, 331 F.2d 541, 546 supra. A requirement that a claimant use a catalogue of the nations' industrial occupations and verbally negative his capacity for each of them is too stringent a requirement of proof and is unrealistic. Underwood v. Ribicoff, 298 F.2d 850, supra. "Where the statute refers to 'any substantial gainful activity' the word 'any' must be read in light

of what is reasonable and not of what is merely conceivable", Thomas v. Celebrezze, supra 331 F.2d at 546.

■ Returning to the primary issue in this case, the Court finds the Secretary's decision not supported by substantial evidence. As was indicated previously, there was some conflict in the evidence, and the Court recognizes that the Secretary has a right to weight the evidence and place a reasonable interpretation thereon. See Kelly v. Celebrezze, 220 F.Supp. 611, 614 (D.C.W.D.S.C. 1963). But the weighing and the interpretation must be reasonable and considered in terms of the individual claimant and his abilities or inabilities, his impairment or lack of impairment, and his capacity or lack of capacity to work. The standard is the individual person, whomever he is. Thomas v. Celebrezze, supra, 331 F.2d at 545; Woolridge v. Celebrezze, D.C., 214 F.Supp. 686.

■ Every doctor substantiates "some disability", some stronger than others. The two doctors who felt that plaintiff was not substantially disabled, it is noted, saw him only once for an examination. He was examined without consulting the family physician. Consideration should properly be given to the fact that the doctors who felt that plaintiff was not substantially disabled were not his treating physicians.

■ Of course, plaintiff has the burden of showing that he was "disabled" while he was in an insured status. Hicks v. Flemming, 5 Cir., 302 F.2d 470, 472, note 1, Cert. den. 371 U.S. 868, 83 S.Ct. 132, 9 L.Ed.2d 106. Plaintiff has met this burden satisfactorily. Plaintiff's treating physicians stated he had chronic cirrhosis, difficult and painful breathing, blindness in one eye and a host of other debilitations which easily place him within the purview of the Act when one considers the individual application of the Act and the somewhat restricted sense of the expression "any substantial gainful activity." The plaintiff's only previous employment was as a "box pusher" in a bleachery for twenty-eight years before he became ill. Aside from having a severely limited education, all the evidence shows that plaintiff can hardly walk any distance on even level ground, he can see only out of one eye (thus no depth perception, *inter alia*) he is weak and nauseous from the effects of cirrhosis and he is by and large debilitated. (The medical report militating the most against plaintiff's claim said in effect that he had only enough liver function for a sedentary life).

■ Must a claimant show that he is unable to work "beyond a reasonable doubt?" Reason and common sense dictates otherwise. "(O)nce the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations." Hayes v. Celebrezze, 311 F.2d 648, 654 (5th Cir. 1963). "(I)f there are other kinds of work which are available and for which the claimant is suited, it is the * * * (Secretary's) burden to adduce such evidence from which a finding can be made that he can do some type of work; actually, not apparently." Blanscet v. Celebrezze, 217 F.Supp. 859, 864 (W.D.Ark.1963).

■ The evidence from the entire record read as a whole can only lead to one conclusion: such time as plaintiff was in an insured status and thereafter, the earning capacity and capability of the plaintiff to engage in substantial gainful activity is and was negligible, if not non-existent.

Accordingly, the Court finds that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. It must, therefore, be reversed.

It is therefore, Ordered, that the decision of the Security be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.

It is so ordered.