**Hazel L. BEST, Plaintiff,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 4391.**

United States District Court
W. D. South Carolina,
Greenville Division.
March 23, 1965.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., and James D. McCoy, Asst. U. S. Atty., Greenville, S. C. for defendant.

HEMPHILL, District Judge.

This is an appeal from a final determination by the Secretary of Health, Education, and Welfare that plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff filed an application to establish a period of disability · on March 16, 1962. Plaintiff must show "disability" beginning on or before June 1, 1962, for entitlement to monthly disability insurance benefits under Section 223 of the Act, 42 U.S.C. § 423; and on or before June 16, 1962, for the establishment of a period of disability under Section 216(i) of the Act, 42 U. S.C. § 416(i). Whether plaintiff became "disabled" within the meaning of the Act subsequent to the effective period of

her 1962 application was not before the Secretary and is not now before this Court.[1]

Claimant who was 44 years old at the time of the hearing in 1963, had worked primarily as a sewing machine operator and last worked in August 1961, having been "laid off" due to low earnings. Her main complaint is a kidney impairment for which she was being treated by Dr. Charlton P. Armstrong.

In March 1962 Dr. Armstrong stated that she had a chronic pyelonephritis and would require close observation for an extended period. The doctor further stated that she was unable to perform any physical duties. On April 30, 1962, at the request of the Social Security Administration, Dr. Armstrong reported that her condition was generally satisfactory, but that she did have some permanent renal damage. Again in June 1962 Dr. Armstrong gave a similar report stating that he hoped to maintain plaintiff in her then present status. This report may have, at first glance, seemed to indicate that the claimant was recovered but it would be reasonable that all the reports of Dr. Armstrong should be read together. In November 1962 he appeared to return to his original diagnosis, again stating that she would require extended observation and was unable to work.

As late as June 16, 1963 Dr. Armstrong made the same report on the claimant's condition.

In June 1962 the claimant was examined by Dr. A. G. Meakin at the request of Dr. Armstrong. Dr. Meakin indicated that the claimant's blood sugar had remained within normal limits (there was some slight evidence of diabetes in the record) and also found that the claimant had inflammation of the bladder (trigonitis). He stated that he agrees that plaintiff should remain off

---

1. Plaintiff's earnings record shows that she will continue to meet the "special earnings requirement" of the Act (20 quarters of coverage out of the 40 quarters ending with the quarter of "disability") at least until March 31, 1965. Thus, plaintiff would be entitled to file a subsequent application alleging "disability" at a later date during which she meets the "special earnings requirement."

work. It is realized, of course, that the opinion of plaintiff's doctor on the ultimate issue of "disability" or inability to work is not binding on the hearing examiner, but it would seem that great evidentiary weight should be placed on this opinion by the treating physician, for to the patient, the claimant, this opinion is "controlling". Smith v. Celebrezze, 239 F.Supp. 337 (W.D.S.C.1965) (decided March 17, 1965). See also Frazier v. Celebrezze, 236 F.Supp. 938, 940 (E.D. S.C.1965).

The effect of the physicians' diagnosis on this refreshingly honest plaintiff can be seen from the following colloquy:

"Q. Have you attempted to get any employment?

"A. Yes. I looked for me for jobs when I was drawing the unemployment and I didn't get anything right then, but I got sick and I went back to Dr. Armstrong and he told me that I wasn't able to work, and I went up to the employment office and told them I wanted for them to stop it.

"Q. You stopped your unemployment voluntarily?

"A. Yes, I did.

    \*    \*    \*    \*    \*    \*

"Q. Did he say you couldn't work even though you could get a sitting-down job?

"A. That's right. He said I couldn't work if I did, no kind of work, and I went straight to the employment office and told them because I didn't want anything that didn't belong to me.

    \*    \*    \*    \*    \*    \*"

Mr. Carl Best, plaintiff's husband, testified at the hearing and described spells that the claimant would experience during which time she would have to stay in bed 2–3 days at a time. He also testified that Dr. Armstrong had told him that there was nothing that he could do for Mrs. Best. Plaintiff had previously testified that she had a great deal of pain, and that she was unable to walk or do any shopping, apparently her husband did the biggest part of the family housework.

■ The only issue here is whether or not the Secretary's decision is supported by substantial evidence. It is clear here that undue reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

■ The testimony and evidence, properly considered, shows that plaintiff was disabled within the meaning of the Act and that she brought herself within the four elements of proof set out in Jenkins v. Celebrezze, 335 F.2d 6, 8 (4th Cir. 1964). The decision of the Secretary to the contrary is not supported by substantial evidence. For this reason.

It is ordered that the decision of the Secretary is reversed with directions to establish a period of disability and disability benefits for plaintiff as provided in the Act.

Let Judgment be entered accordingly, And it is so ordered.