**Bessie D. MOORE, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education, and Welfare, Defendant.**

Civ. A. No. 4681.

United States District Court
D. South Carolina.

Greenville Division.

Feb. 24, 1966.

Theodore M. Burns, Jr., Greenville, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., and Robert O. DuPree, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Appeal from a "final decision" by the Secretary of Health, Education, and Welfare denying that plaintiff is entitled to disability benefits under the Social Security Act. Before the Court is the sole question of whether or not the Secretary's decision is supported by substantial evidence. If so supported, it must be affirmed. This Court has no authority to try the issues *de novo*. But if undue reliance has been placed on one portion of the record in the face of overwhelming evidence to the contrary, then the Secretary's decision must be reversed. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). The Secretary's decision must be rational.

The Secretary found that plaintiff had certain impairments, but that singly or in combination they were not of sufficient severity to preclude her from engaging in some substantial gainful activity within the meaning of the Act.

The Hearing Examiner observed:

Claimant was born on January 22, 1914 in Spartanburg County, South Carolina. She is five feet, six inches tall and weighs 129 pounds; her weight fluctuates between 125 and 135 pounds. She is right-handed, has been a widow since December of 1962 and she has one daughter who is married. She owns a five-room, one-story house, with bath, in Belton, South Carolina. Her daughter brought claimant to the hearing;

she and her husband are living with claimant temporarily. Claimant finished the sixth grade in school when she was 13 years old. She lost her parents and had to quit school and help on the farm. She helped farm until 1930, at which time she moved to Belton and lived with her sister. On November 11, 1940 claimant went to work in the Belton Mill and worked there consistently until April 2, 1962. She was a battery filler in the weave room.

The first time she developed any severe illness was when she had the tumor in her breast. This is her primary difficulty. She has some loss of motion in the left arm, weakness and soreness in the chest, shortness of breath, and heart skips beats. She has pain in the left arm and in her chest. Dr. Perry has told her to exercise her left arm.

In April 1962 claimant left the mill to have an operation and was subsequently retired on disability and drew disability benefits. Since that time she has not tried to do any more work. She stated that she can't do anything. She watches television very little because it gets on her nerves. She does not go to church, does not shop. Her condition has been about the same during the past year and the doctors told her she could not do any work. She has to take a pill every night to be able to sleep. During the day she lies down for two or three hours. After she quit work she did not draw unemployment compensation.

Claimant's daughter, Mrs. Rosa Barnes, testified that she and her husband have been living with claimant for a year. Witness stated she cooks the meals, cleans the house and does all the washing. Her mother has tried to do housework but gets short of breath and can't. She said that when her mother tries to do anything she just "fights" for breath and holds the left side of her chest; she also gets pale. Witness

talked with Dr. McIlwain and he told her that claimant was not doing too well and he wanted to see her and check her. She has not talked with Dr. McIlwain since he examined her mother.

Dr. Virginia S. Hardie, Vocational Consultant, testified that, although claimant still has her finger and hand dexterity and could use her hands, this is grossly affected by the limitation of motion of her left shoulder. Therefore, she would not recommend this kind of use. She is very literate and accurate and correct in answering of questions, seeming to comprehend exceedingly well and able to clarify her responses. She can think, reason, is well oriented as to time, place and people, is quite alert. Dr. Hardie stated that claimant would be greatly helped by getting her depressive reaction averted or diverted, if possible. The jobs she thinks claimant could do would require no training. One job she mentioned was that of houskeeper in a hospital, for example, where she would have charge of dispensing linens or cleaning equipment. This would not entail any real difficult work on her part, except that of being there. She could sit or move around; she would not necessarily have any lifting to do. She would have to keep an inventory, which Dr. Hardie feels she would be able to do. Another type of work would be that of housekeeper in a home—not an individual home but a home for the aged, for example. This job would be keeping an inventory and dispensing linens and this sort of thing; these are not physical jobs, actually. Another type of job Dr. Hardie mentioned was information clerk. All three of these jobs would be sedentary and semi-skilled. She also recommended the job of sales clerk. For an example, she used Avon sales, where a person could call on maybe two homes a day. This would give claimant some type of outlet at her

own rate of physical speed. Another type of job she mentioned which might be done on a part-time basis would be that of counterwoman in a cafeteria. These types of work would give claimant some communication with others, which she needs psychologically, would not be heavy physically, classified as light, and would utilize her mental ability. Dr. Hardie testified that there is a connection in a depressive reaction, or any type of emotional disturbance, with shortness of breath.

The vocational consultant, in appraising plaintiff's employability, had her feet firmly planted in the air. On cross examination she stated that plaintiff would be able to secure employment as a housekeeper or information clerk, on an eight-hour day, and would be allowed to lay down and rest or sleep during two or three hours of each work day, consonant with plaintiff's doctor's instructions. Other examples of employability were similarly ludicrous.

The Secretary's decision that this incapacitated plaintiff is capable of substantial gainful activity is simply not supported by substantial evidence. Plaintiff here, as all persons before administrative tribunals, is entitled to some modicum of fairness, an administrative "due process," and a decision must be fairly grounded upon the evidence, and upon reason. Here, there is a clear failure of substantial evidence to support the Secretary's decision, affirmance of his decision by this Court would subvert the Congressional intent.

Plaintiff does not live in a fanciful, make-believe, industrial world where people are hired on the basis of sympathy. See Terrell v. Celebrezze, 245 F. Supp. 874, 875 (W.D.S.C.1965). Her value to an employer is based on productivity. The record shows conclusively that she is not capable of any gainful activity. Accordingly, the Secretary's decision will be reversed.

The Clerk will enter Judgment for plaintiff.

And it is so ordered.