Willie Mae AMICK, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 4956.

United States District Court
D. South Carolina,
Greenwood Division.

March 29, 1966.

Thomas H. Pope, Robert D. Schumpert, Pope & Schumpert, and E. Maxcy Stone, Newberry, S. C., for plaintiff.

John C. Williams, U. S. Atty., and Geddes Hugh Martin, Asst. U. S. Atty., District of South Carolina, for defendant.

DALTON, District Judge.

This action was brought by plaintiff pursuant to 42 U.S.C.A. § 405(g) (1964) (§ 205(g) of the Social Security Act), as amended, to obtain court review of a decision of the Secretary of Health, Education and Welfare disallowing her claim for Social Security disability benefits.

Plaintiff filed application for a period of disability and for disability insurance benefits on March 19, 1964, alleging that she became unable to work in April of 1963, at the age of 56. It was initially determined that plaintiff was not under a disability as defined by the Social Security Act, and this determination was affirmed upon reconsideration on August 22, 1964. A hearing was then requested and the Hearing Examiner, before whom plaintiff, her attorney, and various witnesses appeared, considered the case *de novo*, and on December 15, 1964, found that plaintiff was not disabled during the effective period of her application. This became the "final decision" of the Secretary when the Appeals Council denied plaintiff's request for a review on February 26, 1965.

According to the Hearing Examiner,

> The issues for decision are whether the claimant is entitled to disability insurance benefits under Section 223 (a) of the Social Security Act, as amended, and whether a period of disability may be established under Section 216(i) of such Act. The issues are dependent upon specific findings as to whether during the effective period of the application filed March 19, 1964, and while the special earnings requirements were met, the claimant was under a disability in that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration and, if so, the beginning date of such disability. The claimant met the special earnings requirements during the effective period of the application, and continues to meet such requirements through March, 1967. Thus, on the basis of the application filed on March 19, 1964, the evidence must establish that the claimant was under a disability as defined in the Act beginning on or before June 1, 1964, for entitlement to disability insurance benefits, and on or before June 19, 1964, for establishment of a period of disability.

The court must now determine, within the standards of judicial review which have been set for such an administrative decision, whether the Hearing Examiner (whose decision became that of the Secretary) was correct in determining that plaintiff was not under a disability as defined by the Act.

Claimant lives alone in a one room store building with a partition separating the sleeping quarters from the kitchen. She does not have a car and has not driven any vehicle since the onset date. Friends and relatives provide her with transportation in their cars. Any trips that she makes are of a very limited distance—she states that she occasionally goes to the grocery store and attends church when she is able.

Mrs. Amick completed the eighth grade of a rural school and has had no further education or training. She has worked as a sewing machine operator in a garment plant, operating an electric sewing machine from a sitting position. This required the use of both hands and feet.

Claimant has also worked as a clerk in a post exchange and for a very short time in a "dime store" as a young girl. She also worked on a farm when very young. She allegedly has no other types of past work experience. Mrs. Amick stopped work allegedly because of her impairments in March of 1962 and has not worked since. She began wearing a back brace in April of 1963 and has worn this brace at all times since.

Claimant's daily activities are limited to nominal household chores (cooking, washing dishes, making her bed, taking out small sacks of garbage, etc.), reading, and occasional sewing. She testified that she could do the latter for no more than an hour at a time. When able, she attends Bible studies at night, which were moved to the home of her next door neighbor so that she might participate.

Mrs. Amick complains of arthritis, severe headaches, constant pain (mainly in her back), and constant nausea. She testified that practically any exertion on her part would result in "dizzy spells" which terminate in a complete loss of consciousness unless she immediately stops and rests.

Plaintiff takes daily prescribed medication for circulation problems, stomach problems, and disorders of the kidneys and bladder. She also takes tranquilizers regularly.

Plaintiff's testimony was corroborated by her next door neighbor and her minister. A letter from her employer, Mr. Morris Kurlat, confirmed that she was often absent from work because of illness, it finally appearing that her health would not permit her to continue her duties at the garment factory at all.

Mrs. Amick has been examined by several physicians who have made a number of findings relative to her health, and the singly most prominent objective aspect of her disorders seems to be osteoarthritis of the spine. She also has a hiatal hernia but was advised not to have it repaired in view of the nature of the operation and the number of times that she had previously undergone surgery. Dr. J. E. Dupre noted in his report that "obviously this is a sick woman," and Dr. Lee C. Dimery said, "I doubt that this lady will ever be able to assume duties consistent with gainful employment." All the evidence indicates that plaintiff's troubles will be of indefinite duration.

42 U.S.C.A. §§ 416(i) and 423(c) (1964), define "disability" as:

* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

■■ The burden is on the plaintiff to establish such disability, 42 U.S.C.A. §§ 416(i) (1) and 423(c) (2) (1964), and the findings of the Secretary are conclusive on this court if supported by "substantial evidence." 42 U.S.C.A. § 405(g) (1964). "Substantial evidence" seems to be more than a scintilla, but less than a preponderance. Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). In the latter decision the Court of Appeals for the Fourth Circuit gave a good summary of the scope of judicial review in these cases, and this court will quote from that opinion:

The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If his findings are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize "the record as a whole" to determine whether the conclusions reached are rational. Universal Camera Corp. v. NLRB, 340 U.S. 474, [71 S.Ct. 456, 95 L.Ed. 456] (1951); Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958); Thomas v. Celebrezze, 331 F.2d 541, 543 ( 4 Cir. 1964).

In Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), the Fourth Circuit held that there are four elements of proof to be considered in making a finding of a claimant's ability or inability to engage in any substantial gainful activity, specifically:

(1) the objective clinical findings of treating or examining physicians divorced from expert judgments or medical opinion as to their significance;

(2) the diagnoses and expert medical opinion of the physicians "on the subsidiary questions of fact";

(3) subjective evidence of pain and disability testified to by plaintiff and lay witnesses; and

(4) plaintiff's educational background, work history, and age.

The court noted that the first three criteria alone will not establish a statutory disability, but they must be viewed in relation to the fourth. It said that objective clinical findings seldom show, without more, the overall effects of the impairments on a particular individual, and so subjective evidence must also be considered to determine whether a particular situation amounts to disability in terms of the Social Security Act.

 It is evident that the claimant need not be completely helpless or bedridden to fall within the purview of the Act. Likewise, she need not go down a list of all conceivable occupations and verbally negate her capacity for each of them or her opportunity for employment. "*Any* substantial gainful activity" is to be read in the light of what is reasonable and not what is conceivable. Thomas v. Celebrezze, supra; Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963). Along these same lines, plaintiff is not prejudiced by reason of the fact that she has not taken to selling apples or pencils on a streetcorner. "It is no answer that the claimant may be theoretically capable of performing some one of the 'nonphysical, observational' jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation." Thomas v. Celebrezze, supra, 331 F.2d at 546.

 Both Underwood v. Ribicoff, supra, and Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962), recognize that courts should avoid overly strict interpretations of the standards of disability, and it is this court's opinion that the finding of the Secretary that the plaintiff in this case was not disabled within the meaning of the Social Security Act is not supported by substantial evidence. It must therefore be overturned.

 Plaintiff's testimony of her inability to engage in any activity for an appreciable period of time was corrorated by two lay witnesses, and the objective findings of several physicians reinforce the court's conclusion that she was not malingering or overdramatizing her condition. Further, it is obvious that plaintiff's lack of education, coupled with her limited employment experience (with respect to the type of work she has performed in the past), restricts greatly the number of jobs for which she would be qualified.

On page four of his report (Tr. 7), the Hearing Examiner says, "The lay evidence corroborates the medical evidence in that claimant is able to perform household chores in the room in which she is living. She is able to cook for herself, make beds, change the sheets, iron dresses from a standing position, take out trash or garbage, walk a little in the yard, attend Bible studies at night, and sew her clothing on a treadle type machine for an hour at a time. These activities are no more strenuous than those required of an operator of an electric sewing machine in a factory, in which activity claimant has had years of experience, or as a clerk in a store or cashier, in which work activities claimant has also had past experience."

This statement may be correct in as far as it goes, but the court believes that the Examiner's error lies in not developing his theory to its logical conclusion by applying it to a practical employment situation. Certainly, plaintiff may have been

physically able to operate a sewing machine, but she testified that she could sew no more than an hour at a time, and to retain her job at the garment factory, it would be necessary for her to be at work all day, or at least a good part of the day. It was not the activity itself which bothered the plaintiff most, but the *duration* of the activity. It would seem from the record that plaintiff could not predict at what hours of the day or for how long she would be able to engage in what little activity she was capable of. One day, she might feel like sewing from 10:00 A.M. to 10:45 A.M.; the next day, she might be unable to sew at all; the following day, she might not feel like working until 3:00 in the afternoon, and so on. Plaintiff testified that she could not get up in the morning with regularity, and that it was 10:00 or 10:30 before she was able to bathe. These factors would certainly prevent her from assuming any regular employment, as she would be unable to assure her employer that she could be on the job consistently during working hours. In addition, Mrs. Amick's activities are so limited that the volume of sewing which she might be able to take in at home would be so small that it could hardly be considered *substantial* gainful employment.

Throughout these proceedings it has been recognized that a claimant need not be totally helpless in order to be entitled to benefits, yet Mrs. Amick seems to be just a step away from this condition. The Examiner (and counsel for the Secretary, in his brief) placed great stress on the fact that plaintiff was able to perform certain minimal household chores (assuming, of course, that she could do them at her convenience, stopping and resting when necessary), and the fact that this is put forth as somewhat of an accomplishment points out just how poor a state of health plaintiff is in. It should go without saying that Mrs. Amick can handle these limited tasks —if she were unable to do so, she would be truly "helpless" in the literal sense of the word.

It is the court's judgment that the decision of the Secretary is not supported by substantial evidence and that Mrs. Willie Mae Amick is entitled to the benefits she seeks.

Therefore, it is Adjudged and Ordered that the decision of the Secretary of Health, Education and Welfare, be and the same is hereby reversed, and this case is remanded to the Secretary for the payment of benefits to plaintiff.

The purposes of this action having been accomplished, it is Ordered stricken from the docket.

The Clerk is directed to send a copy of this Opinion and Final Judgment to counsel of record.