Carmela L. SOTTILE

v.

John W. GARDNER, Secretary of Health, Education, and Welfare.

Civ. A. No. 66-805.

United States District Court
D. Massachusetts.

Nov. 28, 1967.

Francis J. Cranston, Barre, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., for defendant.

## OPINION

WYZANSKI, Chief Judge.

This action, under 42 U.S.C. § 405(g), seeks review of the denial by the Department of Health, Education, and Welfare of Miss Carmela L. Sottile's claim to a period of disability or disability insurance benefits under §§ 216(i) and 223(c)(2) of the Social Security Act as it read before the 1965 amendments. The term "disability" then meant "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The findings included in the Hearing Examiner's decision, determined to be correct by the Appeals Council, and supported by the oral testimony of the claimant as the sole witness heard *ore tenus,* by an earlier interview included in a report made by a Department employee whose name appears to be L. L. Kohernol, and by the medical reports of the claimant's doctors, Daniel J. Cotter, a general practitioner, and Jesse O. Arnold, a psychiatrist, and by a neurological and psychiatric consultant, Malcolm Sills, and a consulting psychologist, James F. McCourt, both responding to examination requests from The Commonwealth of Massachusetts Rehabilitation Commission, Disability Adjudication Unit, may be briefly summarized.

Miss Sottile was born in 1915. At 14 she finished the eighth grade of school. Aged 16, she went to work on a machine for Barre Wool Combing Company, first at its Monet Mill, and then at another of its plants. Her assignment was every 5 minutes to place cans of raw wool back of the machine, and every minute to take off a wool ball and put it on the floor. This work was done under hot and dusty atmospheric conditions. While so employed she was "nervous" but not under a doctor's care. From 1931 to 1947 and occasionally at other times, she had lay offs for want of work in the factory. About 1954 she left the mill.

From September 1954 to 1959 or 1960 she was employed at Stetson [Boys'] Home. There she was a domestic helper, chiefly engaged in cleaning, ironing, cooking. This was part time work, averaging 3 to 5 hours a day, or 10 to 20 hours a week. Her starting pay was 75 cents an hour; but rose to $1.25. She liked her work but did not feel well enough to work. So she stayed out for a while. Then the Home wanted someone who lived in to do the work, and they offered her the job of taking care of boys 6 and 7 years old. She refused that job which would have been principally washing boys, clothing them, and getting them ready for school.

In 1960 she went to work at Reliance Laundry on a part-time basis: 3 to 6 hours a day, or 24 to 30 hours a week. Her job was to operate a simple pressing machine called a mangle. She left because she did not feel well, was nervous, and could not continuously stand.

In 1961 and 1962 she did casual household work, at $1.25 an hour for her family physician, Dr. Cotter, who employed her one or two hours a week, for a Theresa Miller, two or three hours a week, and for a Mrs. Cappolini, once or twice a month for three hours at most at a time. The work was irregular and involved nothing strenuous, except occasional floor polishing.

While at the Stetson Home Miss Sottile earned in 1959 $437.75 and in the first two quarters of 1960 $453.25. Whether after the middle of 1960 her total earnings from domestic chores were at the same rate seems, to say the least, doubtful. Probably the total was so low as not to be reportable to the Internal Revenue authorities by her or her casual employers.

After 1962 she did no work except in her brother's household where she lived. This was very, very light work. If she cleaned her own room she was sometimes unable to do any work the next day.

In 1951 she consulted her then family physician, Dr. Warner, who in 1952 sent her to Dr. Arnold, a psychiatrist, who gave her pills. She complained of being dizzy, tired, and unable to stand.

Dr. Warner having gone to another city, she in the 1960's had and still has as her family physician Dr. Cotter, who in 1965 sent her to see the same psychiatrist, Dr. Arnold, again. About 1961 she experienced her menopause.

She is now 5 feet 4 inches tall, and weighs about 150 lbs.

The several doctors who at the claimant's and the Commonwealth's request examined Miss Sottile do not differ in any significant manner as to their opinions as to her physical and mental impairments affecting her ability to engage in any substantial gainful activity. Nor are there meaningful distinctions reflecting the differences according to the dates the several opinions were expressed or the dates the several examinations were conducted.

Taken separately or collectively, the medical reports are clearly to this effect. Miss Sottile looks older than her age. She is unsophisticated, dull, and repetitive in speech. She is and gives the impression of being mentally deficient in the sense that she is functionally retarded, has spontaneity, or capacity to reason abstractly, or reliable judgment on other than trivial matters, or social

sensitivity. Indeed her history shows that she never went out with a boy because "nobody ever asked me." She has "had no social or recreational life" except for contacts with her immediate family, rare visits to relatives, purchases from shopkeepers, and work shared with fellow employees in simple jobs. She obviously likes work as a form of social intercourse and as a method of getting needed funds. But that liking is overcome by her nervous and dizzy spells which during all relevant times have precluded her from working steadily and which for even the most casual employer have made her an economically undesirable employee. The unanimous opinion of the medical reporters is that she has a schizoid personality.

Despite what the Department has concluded, the record permits of only one conclusion: that Miss Carmela L. Sottile has a statutory "disability" in that she has an inability to engage in any substantial gainful activity by reason of a "medically determinable * * * mental impairment which can be expected * * to be of long-continued and indefinite duration." If proper emphasis is placed on the word "substantial" it is undeniable that Miss Sottile cannot secure substantial gainful employment. Moreover, if, as is correct, a "medically determinable * * * mental impairment" includes a schizoid personality, Miss Sottile surely falls within the class. She is an obvious example readily recognizable by and recognized by any competent doctor and one would hope by any experienced, fair-minded official representative whose rigor did not surpass the sympathetic consideration contemplated by the Social Security Act. Compare Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1964); Amick v. Celebrezze, 253 F.Supp. 192 (D.S.C.1966); Brown v. Gardner, 251 F. Supp. 770 (D.S.C.1966).

The Administration's determination and order are set aside, and the case is remanded to the Secretary to proceed in accordance with this opinion.