Ethel B. **ORR**, Plaintiff,

v.

**John W. GARDNER**, Secretary of Health, Education and Welfare, Defendant.

**Civ. A. No. 66–59.**

United States District Court
D. South Carolina,
Spartanburg Division.

Nov. 21, 1966.

T. Louis Cox, Spartanburg, S. C., for plaintiff.

John H. Williams, U.S. Atty., by Robt. O. Dupre, Asst. U.S. Atty., Greenville, S.C., for defendant.

## ORDER

SIMONS, District Judge.

This is an appeal from a "final decision" of the Secretary of Health, Education and Welfare denying plaintiff disability benefits under the Social Security Act. The sole question before the court is whether the Secretary's decision is supported by substantial evidence. If so supported it must be affirmed. This court has no authority to try the case *de novo*. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

On August 27, 1965, from a hearing held July 22, 1965, the hearing examiner found the claimant had not established that she had impairments, either singularly or in combination, of such severity as to preclude her from engaging in any substantial gainful activity. This decision became the "final decision" of the Secretary when the Appeals Council declined formal review.

Plaintiff was born in July 1912 and completed four years of schooling. She worked for many years in textile mills primarily as a spinner and also as a spooler. She was steadily employed until 1953 when she was forced to give up her job because of a back injury and arthritis. In May of 1946 she was hospitalized and underwent a complete hysterectomy. In 1951 she was again hospitalized with a diagnosis of diverticulitis. After each of these hospitalizations plaintiff return-

ed to her job and worked satisfactorily until 1953.

Plaintiff's main complaint is for lower back pain allegedly resulting from trauma in 1953. She was hospitalized in 1953 and her condition was diagnosed as "lumbosacral sprain with instability." It was then noted that plaintiff experienced "severe pain." Injections were prescribed which gave her some relief, and she wore a back brace which afforded her relief when she was out of bed. She was again hospitalized in August of 1955; the hospital reports indicated "pain in lower back, radiating down back and side of left leg. Patient has had low back pain off and on for approximately four years. Hard for patient to stand erect; painful when coughing and sneezing. Patient states pain runs down leg to the knee." Plaintiff was hospitalized again in October of 1962. Final diagnosis was fracture, old, eighth dorsal vertebra, osteoarthritis of spine, obesity. At the time of this hospitalization, the history taken by Dr. C. S. Finney revealed "In 1952 while working in Arkwright Mill patient fell upon the floor, injuring her back. Later she had to quit work and pain has persisted ever since." She was hospitalized again in September 1963 and the diagnosis was "osteoarthritis of the dorsal spine."

■ Having filed her application on October 18, 1962 plaintiff must nevertheless establish that she was disabled when the special earnings requirements were met. The claimant last met the special earnings requirements on December 31, 1958. The evidence must therefore establish that she was under a disability as defined in the Act beginning on or before December 31, 1958 for entitlement to disability insurance benefits.

The hearing examiner set forth his findings with exactness:

"1. None of the doctors who treated the claimant through December 31, 1958 (the date claimant last met the special earnings requirements of the Act) reported that she was severely impaired or unable to do moderate work.

"2. The claimant had 5 hospitalizations during the 12 year period from 1946 through 1958 as follows:

"a. Admission May 27, 1946, operation complete hysterectomy.

"b. Admission October 27, 1951, diagnosis diverticulitis of colon.

"c. Admission May 5(?), 1953, diagnosis lumbosacral strain.

"d. Admission August 27, 1955, diagnosis ruptured nucleus pulpous.

"e. Admission July 11, 1956, operation repair cystocele and rectocele.

"3. Except where operation was shown conservative treatment apparently improved the claimant.

"4. As of February 12, 1965, there was no evidence of ruptured disc (nucleous pulpous).

"5. From a medical standpoint there is no evidence that claimant could not work at her customary job except when recuperating from hospitalization at any time through December 31, 1958.

"6. There is no medical evidence of psychiatric impairment at any time through December 31, 1958.

"7. The claimant elected to retire at the end of 1953 and has made no effort to work since. She was not yet 42 years old at the time.

"8. She convinced her husband, son, daughter-in-law and two neighbors (but not her doctors) that she couldn't even do her housework and, to the extent that others did for her, she derived a very real benefit.

"9. The Hearing Examiner has evaluated the testimony of claimant and her husband and her subjective symptoms with due consideration for credibility, motivation and medical evidence of impairment and cannot give this evidence sufficient weight to find the claimant disabled while she still met the special earnings requirements of the Act.

"10. The Hearing Examiner has evaluated the testimony of claimant's two witnesses. Any testimony relative to

claimant's *ability* to work is rejected. Testimony as to dates the witnesses started to do claimant's housework appears to be properly based on the operation in 1956 as testified by Mrs. Riddle. The fact that anyone did the housework does not establish that claimant could not have done it had she been willing to do so at any time except for a recuperative period after hospitalization.

"11. Inasmuch as the claimant is not found to have established a disability within the meaning of the Act, including the 1965 Amendments, within the period she met the special earnings requirements of the Act, no period of disability can be established for her." (Footnote omitted.)

The hearing examiner's analysis of the testimony received by him at the hearing obviously disregards the corroborating testimony of plaintiff's family and neighbors as to her subjective disability. Judge Bell in Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), underscores the relevance of this type of evidence. The hearing examiner must have strong considerations for disregarding it. Dr. C. S. Finney who treated plaintiff in 1962 stated: "This patient is definitely disabled and will probably never be able to perform any gainful work." There is similar testimony from other physicians which was dismissed by the hearing examiner as not relative to the plaintiff's condition prior to 1958. From the entire record this court is unable to agree with the hearing examiner. Whether sufficient evidence existed in 1958 to determine conclusively that the claimant was disabled is academic. Later events certify the prior disability. The hearing examiner reads *"post hoc, [ergo]*

*propter hoc"* [1] as to medical evidence out of context with the present situation. We are not engaged in the medical probability of cause and effect, we are to evaluate objective clinical evidence with all the other evidence to determine if plaintiff is unable to engage in substantial employment because of medically determinable impairments. Plaintiff now is by any analysis or imagination unable to engage in any *gainful* activity. To say that these impairments in 1958 were not *then* disabling is rank speculation. Suffice it to say that plaintiff who had worked steadily for many years did stop work prior to 1958, subsequent events merely established the certainty of her medically determinable impairments. Dr. Samuel R. Kilgore, a full time specialist in psychiatry, examined the plaintiff at the instance of the Government and in a report dated April 14, 1965 reported his findings.

"DIAGNOSTIC IMPRESSION: Predominantly character structure disorder, 'psychosomatic personality' with accordingly rather high indicies of rigidity, obsessive compulsiveness, and considerable dependency. Hostility levels are quite high but not easily recognizable. There is certainly considerable depressiveness and anxiety. How much of this is an expression of the lowered threshold as a result of pain is another question. At the character structure level there exists a marked 'spasticity.' She appears to have been a compulsively active person."

The only reasonable conclusion that can be substantiated from all of the evidence when taken as a whole is that plaintiff has demonstrated a requisite physical limitation as of the critical date.

---

1. In an attachment of medical and legal authorities to his findings the hearing examiner quoted at page 19 of the record: " 'While the reasoning *"post hoc, propter hoc"* is often fallacious, the onset of a psychosomatic illness shortly after some psychic trauma occurs too often to be mere coincidence in every case. *In older men, and sometimes in older women, retirement is often a*

*factor.'* Dr. Wingate M. Johnson, "Medical Management of Older Patients", J.A.M.A. 175:649 (1960) page 650."
*Post hoc, ergo propter hoc* in logic is usually intended as "the fallacy of arguing from mere temporal sequence to cause and effect relationship." Webster's International Dictionary, p. 1229 (2d ed. 1946).

A consideration of her age and educational background in the light of her sole occupational history of performing strenuous labor in the textile mills leads to the conclusion that her prospect for retraining and employment are non existent. She has no transferrable skills. Accordingly, the court finds that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. It is, therefore,

Ordered that defendant's motion for summary judgment be denied and the decision of the Secretary is hereby reversed. The Clerk will enter judgment accordingly.

And it is so ordered.