**William J. UNDERWOOD, for and in behalf of Marion R. Cardwell, Deceased, as Next Friend and Interested Party, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.**

**No. C–127–G–69.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

Jan. 5, 1970.

**1158**

Robert R. Blackwell, Yanceyville, N. C., and Alfred S. Wyllie, Jr., Danville, Va., for plaintiff.

William L. Osteen, U. S. Atty., Greensboro, N. C., for defendant.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

The plaintiff, William J. Underwood, for and in behalf of Marion R. Cardwell, deceased, and as next friend and interested party, seeks judicial review, pursuant to 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) of the final decision of the Secretary of Health, Education, and Welfare, denying to Marion R. Cardwell the establishment of a period of disability and disability insurance benefits.

Marion R. Cardwell filed an application for the establishment of a period of disability and for disability insurance benefits on August 2, 1966, alleging that she first became unable to work in November of 1965, at age fifty-two, due to high blood pressure, removal of her womb, and arthritis. Her application was denied initially on September 16, 1966, on the grounds that she was not insured for disability purposes under the Act at the time she alleged her disability started. Marion R. Cardwell stated on her application that she resided at 501 Calhoun Street, Danville, Virginia.

On November 26, 1966, and before the expiration of the time within which she could ask that the disallowance of her application be reconsidered, Marion R. Cardwell died. The death certificate states that her death was due to bronchopneumonia of three days duration, secondary to a fracture of her neck and femur ten days earlier.

On March 31, 1967, the plaintiff, giving his residence as 1003 South Scales Street, Reidsville, North Carolina, requested that the disallowance of the application of Marion R. Cardwell, deceased, be reconsidered, asserting that the decedent did not first become unable to work in November of 1965, as she had alleged in her application, but had been disabled at least two years before her death. The disallowance of the application was reconsidered, as requested, and upon reconsideration, was again disallowed. Plaintiff thereafter requested a hearing before a hearing examiner, and

on August 21, 1968, Hearing Examiner Charles H. Evans entered an order dismissing the claim for the reason that plaintiff was not one of those persons enumerated in Section 204 of the Social Security Act, as amended January 2, 1968, 42 U.S.C. § 404, who may receive Social Security Benefits on behalf of Marion R. Cardwell, deceased. On September 10, 1968, plaintiff requested review by the Appeals Council of the decision of Hearing Examiner Evans dismissing the claim. On December 27, 1968, the Appeals Council found that plaintiff had established that he was "a proper party to a hearing," and remanded the matter to a hearing examiner for the purpose of taking evidence on the relevant issues involved, and issuing a decision on the merits. The Appeals Council cited no statute, regulation or decision in support of its finding that plaintiff "was a proper party to a hearing."

In obedience to the command of the Appeals Council, Hearing Examiner George W. Blaine held a hearing on February 26, 1969, at which time plaintiff was afforded an opportunity to appear and present proof in support of his claim. On March 21, 1969, Hearing Examiner Blaine rendered his decision, finding that Marion R. Cardwell last met the special earnings requirement of the Act on June 30, 1963, and that the plaintiff, as next friend and interested party, had failed to establish the presence of an impairment, or a combination of impairments, on that date of such a degree of severity as to have prevented Marion R. Cardwell from engaging in any substantial gainful activity. On March 28, 1969, the plaintiff requested the Appeals Council to review the decision of Hearing Examiner Blaine, and on April 29, 1969, the Appeals Council concluded that the decision of the Hearing Examiner was correct, and ordered that said decision stand as the final decision of the Secretary.

Plaintiff thereafter instituted this action, requesting judicial review of the decision of the Secretary. Following the filing of an answer and a certified copy of the entire administrative proceedings, the parties cross-moved for summary judgment. The Court concludes that the plaintiff has neither shown that he is the proper party to maintain this action, nor that he is entitled to prevail upon the merits.

■ Plaintiff's individual rights to a Social Security benefit are not in issue in this case. On the contrary, they pertain only to those rights the decedent, Marion R. Cardwell, may have had. Nor does the plaintiff have any right to the payment of benefits which might otherwise be due the decedent, for he is not her husband, or her heir, or a legal representative of her estate. In his complaint, he merely asserts that he is suing as next friend and an interested party. This, however, does not make him an individual having rights which are prejudiced by the decision of the Secretary for the reason that he is not, individually or in any legal capacity, being deprived or denied any pecuniary interest or payment to which the decedent, as an applicant for disability insurance benefits under the Act, might have otherwise been entitled. If any doubt exists as to the capacity of the plaintiff to assert the claim of the decedent for disability insurance benefits, such doubt is completely removed by the provisions of Section 204(d) of the Act, 42 U.S.C. § 404(d). There can be no question that plaintiff is not included in the list of individuals, or category of individuals, to whom payments due a decedent may be made. When plaintiff was asked to explain his relationship to decedent, he replied: "Well, I was supporting her, feeding her, clothing her, and furnishing her a place to stay, and we *intended* to get married." (Emphasis supplied.) Since the plaintiff could not be paid the moneys he seeks, he has no standing to maintain this suit against the Secretary. There is nothing in the record to support, or even explain, the order entered by the Appeals Council on December 27, 1968, holding that plaintiff was "a proper party to a hearing." Even conceding that he was a

proper party to a hearing, he did not establish at the hearing that he was the proper party to maintain this action or to receive the benefits he seeks.

Even assuming *arguendo* that plaintiff has standing to maintain this action and to claim the benefits he seeks, the record establishes that the decedent was not under a disability on the date she last met the special earnings requirement of the Act, and that no benefits would be payable to her even if she were still alive and the plaintiff in this action.

■ It is not disputed that the decedent last met the special earnings requirement of the Act on June 30, 1963. Consequently, it was plaintiff's burden to establish that decedent was under disability, as defined by the Act, on or prior to that date, which lasted or could be expected to last, for at least twelve months. Whether the decedent became disabled subsequent to June 30, 1963, was not before the Secretary and is not before the Court. Flack v. Cohen, 4 Cir., 413 F.2d 278 (1969).

Effective July 30, 1965, the Social Security Act was amended by defining the term "disability" to mean " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected * * to last for a continuous period of not less than 12 months." The amendment had the effect of eliminating the requirement that the impairment be one which can be expected to be of long-continued and indefinite duration. Under the 1967 amendments to the Act, the statutory definition of "disability" was further clarified. These amendments provide that a claimant is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists * * * for him, or whether

he would be hired if he applied for work," and the term "physical or mental impairment" is defined to be "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423. The 1967 amendments became effective on January 2, 1968, and apply to decisions in civil actions which had not become final before that date. Davis v. Gardner, 6 Cir., 395 F.2d 681 (1968); Daniel v. Gardner, 5 Cir., 390 F.2d 32 (1968).

On the merits of the claim, the issue before the Court is the substantiality of the evidence to support the Secretary's findings on the issues before him. Thomas v. Celebrezze, 4 Cir., 331 F.2d 541 (1964). In other words, "the Secretary's findings must be accepted if they are supported by substantial evidence * * *," and "the reviewing court may not try the case de novo and substitute its own findings for those of the Secretary." Flack v. Cohen, 4 Cir., 413 F.2d 278 (1969).

■ Plaintiff was the only witness to testify before the hearing examiner. He testified that he had known the decedent a little more than nine years; that the latter part of 1957 they went to Baltimore and stayed about three years; that the decedent was a waitress in a cafe when he first met her; that after working in Baltimore for about three years, they came back to Danville, Virginia, and opened a small grocery store, which he operated for about six years; that the decedent was unable to help much in the grocery store because of her health; that his relationship with the decedent was "supporting her, feeding her, clothing her, and furnishing her a place to stay," and that they intended to get married; that the decedent did the cooking and house-cleaning when she felt like it; that decedent went to see a doctor two or three times while they lived in Baltimore, but that he did not know the name of the doctor or what medicine was prescribed; that he understood the doctor told her that her kidneys and liv-

er were out of order, and that she had high blood pressure; that the decedent was disabled most of the time they lived in Danville and operated a grocery store, but refused to go to a doctor; that she finally went to a doctor in 1966, and had surgery, but that he had noticed a swelling in her stomach some two or three years earlier; that he had "kept after her" to go to a doctor from 1962 until 1966; that after visiting her brother and sister in New Jersey in about 1965, she had a light stroke, which she never seemed to get over.

Dr. C. H. Moricle reported that decedent was admitted to the Annie Penn Memorial Hospital in Reidsville, North Carolina, on January 16, 1966, complaining of pain in the lower part of her abdomen and pelvis. On January 24, 1966, a total abdominal hysterectomy, including repair of an umbilical hernia, was performed. Her post-operative recovery was fairly good, and she was discharged from the hospital on February 5, 1966, to be seen in the office about a week later for a check-up. A check of the records at the Annie Penn Memorial Hospital disclose that the decedent had also been a patient there from December 27, 1948, until December 29, 1948, from January 18, 1949, until January 20, 1949, from April 29, 1949, to April 30, 1949, from January 6, 1951, to January 8, 1951, and from September 18, 1956, to September 25, 1956. With respect to the 1956 admission, the hospital records disclose that the decedent was discharged with a final diagnosis of cirrhosis of the liver. On August 28, 1967, Dr. Moricle reported that he first saw the decedent on December 14, 1965, and that, according to her, she had been disabled for over two years at that time.

Dr. Ernest H. Reynolds, a general practitioner, reported that he first saw the decedent on December 14, 1965, when she complained of pain in the lower abdomen of several months duration. Physical examination disclosed a fibrosis of the uterus. She was referred to Dr. Moricle for surgery, and Dr. Reynolds last saw her on April 1, 1966, for acute conjunctivitis.

A report from the Western State Hospital covers the hospitalization of the decedent from September 22, 1966, when she was admitted for mental illness, until her death on November 26, 1966. The report states that the decedent's mental disturbance was first observed about five weeks before her admission.

After the hearing, a letter was received from Mrs. J. H. Dillard, Agent for the Greyhound Bus Terminal in Reidsville, stating that she had known decedent for twenty-eight years, and that during the last five years of her life "she was disabled to work."

From the foregoing record, the Secretary concluded that plaintiff had failed to show any impairment, or combination of impairments, of such degree of severity as to have prevented decedent from engaging in any substantial gainful activity on or before June 30, 1963, the date she last met the special earnings requirement of the Act. This conclusion is clearly supported by substantial evidence. In her initial application, decedent stated that she had been disabled since November of 1965, and she never stated otherwise before her death. Plaintiff attempted to overcome this barrier by stating in his request for reconsideration, filed on March 31, 1967, that decedent was disabled to work "at least two years before she died." Even this would fix the onset of the decedent's disability as of November of 1964, more than a year after she last met the special earnings requirement of the Act. Dr. Moricle did not attempt to state how long decedent had been disabled when he first saw her on December 14, 1965, only that decedent stated that she had been disabled for over two years at that time. Accepting this as true, the disability occurred almost six months after June 30, 1963. Mrs. Dillard only stated that decedent was "disabled to work" during the last five years of her life, but did not specify the type of work referred to, the nature of the disability, or other factors that would

have justified a finding of "disability," as defined by the Act.

After conducting a thorough search of the entire administrative proceedings, and considering the record as a whole, the Court is of the opinion, and so finds, that there is substantial evidence to support the findings of the Secretary, and that the record is totally devoid of credible evidence to the contrary. Flack v. Cohen, 4 Cir., 413 F.2d 278 (1969). It follows that the defendant's motion for summary judgment should be granted, and that the motion of the plaintiff for summary judgment should be denied. The latter motion is denied both on the basis of standing and on the merits.

'A judgment will be entered accordingly.