**Kennith M. DANIELSON, Plaintiff,**
v.
**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 73–1943–F.**

United States District Court,
C. D. California.

June 3, 1974.

Kennith Myrle Danielson, in pro. per.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Div. by John E. Nordin, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiff brought this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (hereinafter "the Act"), to review a final decision of the Secretary of Health, Education and Welfare denying him a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i), 423. Defendant has filed a motion for summary judgment requesting affirmance of his determination, and plaintiff has filed a cross-motion for summary judgment in his favor.

The essential facts are:

1. The plaintiff received multiple gunshot wounds on January 27, 1967, while with the Marine Corps in Vietnam. The injuries included a right flank wound which passed obliquely through the pelvis and emerged posteriorly from the spine. Plaintiff retains bullet fragments in the lumbar spine, and a large caliber bullet on the right side near the articular processes. While down he was shot in the rectum by the enemy, with the bullet traversing the abdominal cavity and fragmenting. Plaintiff therefore had both abdominal/pelvic wounds and a direct wound of the rectum itself.

2. Plaintiff had to have a colostomy, and an exploration of the bladder with cystostomy and subsequent repair of both. A colon vesical fistula developed, but was repaired. Plaintiff has a retrograde ejaculation, and has to have dilation of the urethra carried out from time to time. He has a first degree spondylolisthesis, which produces periodic sensations of instability and low back pain. The plaintiff also suffers from recurring residual pain in the rectal/abdominal area and from periods of diarrhea. These symptoms require both emergency and regularly scheduled hospital visits and treatment, in addition to periodic dilation of the urethra.

3. On October 30, 1967 and February 14, 1968 the plaintiff filed applications for disability insurance benefits, alleging disability because of gunshot wounds in the lower abdomen. These applications were initially disallowed because of insufficient quarters of coverage for disability purposes. At a hearing before a hearing examiner of the Department of Health, Education and Welfare on July 28, 1969, the plaintiff presented additional information about summer employment as a real estate sales trainee at age 18. On August 29, 1969, the hearing examiner found that the plaintiff was entitled to a period of disability beginning on January 28, 1967 and continuing to July 9, 1969.

4. Plaintiff worked as a filling station attendant from January 27, 1969 to April 6, 1969. On February 23, 1969 he was seized with a sudden back pain while lifting a tire. He was off for two days, and then went on the graveyard shift for three weeks, where the work was easier. There was absenteeism during February, March and April due to low back pain. Plaintiff resigned when management refused to permit continued assignment to the graveyard shift. Plaintiff began work delivering major appliances in July 1969. He again injured his back while lifting a stove on August 1, 1969, and resigned.

5. Plaintiff was accepted at Oregon State University in August 1970, and majored in business administration. He typically started a quarter with a high of sixteen to nineteen units, but due to medical problems dropped down to eleven to fourteen units. During one quarter plaintiff ended with only eight units, and he has dropped out of one summer session after missing several days. During the summer of 1972 he worked for

two weeks for a lumber company, driving a boat around a pond and pushing logs. The job was not strenuous, but plaintiff was required to resign after missing several days due to stomach problems. Plaintiff has received monthly payments from both the Vocational Rehabilitation and the Veterans Administration. He was scheduled to graduate from Oregon State in June 1973, and has indicated an interest in law, in the belief he could then regulate his hours to conform with his disability.

6. On January 10, 1973 the plaintiff appeared before an administrative law judge on appeal from a reconsideration determination by the Bureau of Disability Insurance dated June 6, 1972, denying an application filed January 27, 1972 for a period of disability and for disability insurance benefits. The hearing decision of February 9, 1973 was adverse to the plaintiff, and became the final decision of the Secretary when affirmed by the Appeals Council on June 20, 1973.

7. The major issues and findings presented by the administrative law judge to support the adverse hearing decision are:

a. Claimant last met the earnings requirements of the law for entitlement to disability insurance benefits on September 30, 1969. To be entitled to a period of disability or disability insurance benefits, it must be shown that said disability commenced on or prior to September 30, 1969.

b. The impression presented by the medical evidence is that the claimant's condition stabilized at a level which permitted substantial gainful activity in the early part of 1969, when he first returned to the labor market as a service station attendant. None of the claimant's injuries or impairments considered alone or in combination were sufficiently severe between July 9, 1969 and September 30, 1969 to prevent the claimant from substantial gainful employment for a period of 12 months.

c. The medical report from Dr. Paul Harmon, dated January 5, 1970, was based on an examination of the claimant on December 30, 1969. This examination was performed in connection with an unsuccessful attempt to obtain compensation for an industrial accident which claimant alleged was causing his back problem. The six page report does not relate at all about the lower abdominal troubles which claimant now states has been the disabling condition since his service injuries and up to the present date.

d. If the claimant can function as a lawyer, why can't he function as a real estate salesman again? The vocational expert testified at the hearing that the claimant can function as a salesman if his training in that field was of the quality to prepare him for these duties and if he is able to drive a car. There is no medical evidence suggesting that the claimant cannot drive.

e. At any rate, it is not necessary to determine what work the claimant can do presently unless it is first established that he was under a disability at some time between July 9, 1969 and September 30, 1969, which continued up to at least 14 months prior to the filing of the claimant's application of January 27, 1972. When the claimant appeared for his prior hearing he was employed driving a truck and installing major appliances. He then stated that he was getting along real good, and that the service injuries did not hamper his moving or lifting. Claimant did not assert his major contentions until January 27, 1972, and was not under a disability within the meaning of the Act at any time between July 9, 1969 and September 30, 1969.

The findings of the Secretary are conclusive if they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). After reviewing the record, the court has concluded that the findings of the Secretary are not supported by substantial evidence and that the plaintiff has met his burden of proving that he was under a disability prior to Sepetmber 30, 1969, which has contin-

ued at least until the hearing date of January 10, 1973. The court accordingly grants the plaintiff's cross-motion for summary judgment and denies the motion of the defendant.

In order to prevail, plaintiff must prove that he suffered from an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The impairment must have resulted from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and must be

"of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work. . . . ." 42 U.S.C. § 423(d)(2)(A).

■ While the statute, 42 U.S.C. § 416(i) casts upon the claimant the burden of proving that a disability exists, it is not expected that this burden be carried to a point beyond reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1961). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Chavies v. Finch, 443 F.2d 356 (9th Cir. 1971). It is obvious in the present case that the administrative law judge ignored or misread the medical record, the testimony of the plaintiff and the opinion of the vocational expert. This evidence does not support the adverse hearing decision of February 9, 1973.

The medical report of Dr. Paul H. Harmon dated January 5, 1970 was primarily concerned with the plaintiff's back problems. This is understandable in view of the fact that Dr. Harmon is an orthopaedic surgeon, and examined plaintiff specifically in connection with a claimed back injury. Nevertheless, the report on several occasions also discusses plaintiff's abdominal and rectal problems. Reports by Dr. Kenneth B. Robertson, dated April 17, 1972 and May 10, 1972, connect the symptoms of abdominal pain with those causing pain in the rectum.

■ Plaintiff's applications for disability insurance benefits on October 30, 1967 and February 14, 1968 alleged disability due to impaired bladder—colon and gunshot wounds—lower abdomen, with disability starting on January 28, 1967. It was not until February 23, 1969, while working as a filling station attendant, that the plaintiff first experienced severe back pains, which he initially attributed to an industrial injury rather than to any gunshot wounds. It is true that during the hearing of July 28, 1969 the plaintiff stated that he was getting along "real good" in his job of driving a truck and delivering appliances. It is also true that the plaintiff had been on the job for less than three weeks, and was forced to resign only four days later due to another back injury. The two limited periods of employment during early 1969, with recurrent absenteeism due to medical problems, certainly do not in themselves demonstrate an ability to engage in substantial gainful activity during the period from July 9, 1969 to September 30, 1969. The fact that the plaintiff left both jobs due to back problems should in no way affect his claim to disability based on other medical problems.

The record shows that the plaintiff claimed disability for impaired bladder and abdominal problems as early as 1967, and not simply on January 27, 1972 as stated by the administrative law judge. The record makes clear that the plaintiff received gunshot wounds of the abdomen and the rectum on January 27, 1967, that he has since periodically experienced extreme pain in these areas, and that these symptoms require recurrent emergency and regularly scheduled hospital visits and treatment. The medical records from Good Samaritan Hospital alone, dealing specifically with plaintiff's ab-

dominal and urethral problems, are extensive and cover a period from November 17, 1970 to November 5, 1972.

The hearing decision of February 9, 1973 concedes a continued medical impairment and a functional limitation resulting from injuries sustained on January 27, 1967 in Vietnam. The primary issue is, therefore, whether plaintiff's condition constitutes a disability within the meaning of the Act. The hearing decision states that the vocational expert testified that the plaintiff could function as a real estate salesman if trained and able to drive a car. This statement is in direct conflict with the testimony of James R. Booth, the vocational expert.

Mr. Booth has been involved in vocational rehabilitation since 1950. He has a master's degree and has completed post master's work in counseling psychology. Since 1962 he has been on the faculty of the University of Oregon, engaged in counselor training programs. Mr. Booth testified that based on the exhibits received prior to the hearing, he had considered tentative job possibilities that included real estate salesmen or general salesmen, and low entry level sitting jobs such as drill press operator, buffer or polisher, and assembly line worker. In response to interrogation by the administrative law judge, Mr. Booth stated that if plaintiff's testimony at the hearing as to frequency of hospital visits due to pain were accurate, that he would modify these tentative job possibilities first considered, and now say they would be inappropriate. In further response to a question by plaintiff's attorney, Mr. Booth then testified that even disregarding entirely the testimony of the plaintiff, and relying solely on the exhibits, including the medical records from Good Samaritan Hospital which had been received just that morning, that none of the tentative jobs considered would be appropriate for the plaintiff.

The Department of Health, Education and Welfare found that the plaintiff was disabled and entitled to disability benefits from January 28, 1967 to July 9, 1969. The medical records demonstrate that the plaintiff's condition did not improve, but further deteriorated during and following this period. The administrative law judge has questioned why the plaintiff cannot function as a real estate salesman if he can function as a lawyer. There is nothing in the record to indicate that the plaintiff can or was able to function as either. The vocational expert, based on the written record, could not state that the plaintiff was capable of carrying out any of the tentatively considered jobs including real estate salesman, or any other jobs, during the July, August and September 1969 period and up to the January 10, 1973 date of the hearing.

Since the court has found that the findings of the defendant are not supported by substantial evidence, and that plaintiff has met his burden of proving that he was disabled within the meaning of the Act over the period in question, the defendant's motion for summary judgment is denied, and plaintiff's cross-motion for summary judgment is granted.

This memorandum opinion shall constitute the findings of fact and conclusions of law of the court pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure.

Pursuant to Rule 58, a separate judgment will be entered as follows:

1. Plaintiff's motion for summary judgment is granted.

2. The defendant's motion for summary judgment is denied.

3. The decision of the Secretary of Health, Education and Welfare that plaintiff is not entitled to a period of disability under Section 216(i) of the Social Security Act as amended, 42 U.S.C. § 416 (i), or to disability insurance benefits under Section 223 of the Act, 42 U.S.C. § 423 is reversed.

4. The plaintiff is entitled to the benefits described in the preceding paragraph of the judgment.

5. The court retains full and complete jurisdiction over the parties and the action for all purposes.