879 F.2d 862
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ferry O. BOATWRIGHT, zdo-dd-ajcu Plaintiff-Appellant,
v.
SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.
 No. 88-2955.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 8, 1989.
Decided: July 12, 1989.
 
 Mary J. Wiesen-Kosinski, for appellant.
 Mary Christine Roemer, Assistant Regional Counsel (Bruce R. Granger, Chief Counsel, Region IV; Mary Ann Sloan, Principal Regional Counsel for Social Security Disability Litigation; Haila N. Kleinman, Supervisory Assistant Regional Counsel, Office of the General Counsel, Region IV, Department of Health and Human Services; John R. Bolton, Assistant Attorney General; Vinton D. Lide, United States Attorney, on brief), for appellee.
 Before K.K. HALL and WILKINS, Circuit Judges, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Ferry O. Boatwright ("claimant") appeals from an order of the district court affirming the Secretary's denial of his claims for disability insurance benefits and supplemental security income ("SSI"), brought pursuant to 42 U.S.C. Sec. 405(g) and 42 U.S.C. Sec. 1383(c)(3). For the reasons set forth below, we vacate the judgment of the district court and remand the case with instructions to the court to return it to the Secretary for further proceedings.
 
 I.
 
 2
 The claimant filed concurrent applications for disability insurance benefits and supplemental security income on February 15, 1983, alleging disability since November, 1982. The applications were denied initially and upon reconsideration. Pursuant to the claimant's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 18, 1983. The ALJ found that the claimant was not disabled. The Appeals Council denied review and the claimant sought judicial review. The case was referred to a magistrate who remanded it to the Secretary for further findings.[1]
 
 
 3
 Pursuant to the remand order, a supplemental hearing was held on October 14, 1986, and further evidence was taken. Again the ALJ denied benefits, finding that the claimant could perform sedentary work and thus was not disabled. The Appeals Council also denied benefits and the district court affirmed.
 
 
 4
 The claimant was 34 years old at the time of the supplemental hearing. He has a ninth-grade education, a vocational school certificate in maintenance, and past work experience as a factory mechanic. Medical evidence at the hearings showed that the claimant has a history of mitral valve prolapse with recurring chest pains for which he has sought treatment on various occasions. He also suffers from labile hypertension, hysterical personality disorder, and depression. In addition, the claimant testified that he is subject to anxiety attacks, has blackout spells and has periodic back and chest pains which prevent him from lifting or standing for any length of time. There was also evidence that claimant suffers from borderline intellectual functioning.
 
 
 5
 The claimant was working at the time of the supplemental hearing and had engaged in substantial gainful employment since July of 1984. Prior to July of 1984, he had not worked since November of 1982.
 
 II.
 
 6
 The claimant's principal contention on appeal is that the ALJ failed to recognize that medical evidence established the presence of a disabling mental impairment listed in section 12.05C of Appendix 1 to 20 C.F.R. Sec. 404, Subpart P.[2] Section 12.05 states in part:
 
 
 7
 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) ...
 
 
 8
 The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function; ....
 
 
 12
 There are two requirements under section 12.05C. First, a claimant's I.Q. score must come within the listed range of 60 to 69 inclusive, and second, he must be able to demonstrate an additional significant limitation. We find that claimant meets both of these requirements. The claimant underwent four separate psychological evaluations. In December, 1982, Dr. Charles Jackson administered the Wechsler Adult Intelligence Scale--Revised ("WAIS-R") with results that showed that the claimant was functioning on the borderline level of intellectual ability with a verbal I.Q. of 75, a performance I.Q. of 71, and a full-scale I.Q. of 72. Dr. Jackson found that the claimant had extremely poor insight and a tendency to develop somatic symptoms. He also found suggestions of an adjustment disorder with mixed emotional features. In October, 1983, Dr. Jackson again evaluated claimant and the WAIS-R showed that claimant had a verbal I.Q. of 72, a performance I.Q. of 65, and a full-scale I.Q. of 67. In a report accompanying the test results, Dr. Jackson wrote that there was evidence that claimant was not doing his best on the tests and that he was malingering.
 
 
 13
 In November, 1984, the claimant underwent further psychological testing by Dr. Thomas Boyd. The WAIS-R revealed a verbal I.Q. of 73, a performance I.Q. of 65, and a full-scale I.Q. of 68. Dr. Boyd submitted a report in which he noted that claimant's concentration was highly variable and may have influenced his test performance. Dr. Boyd recognized the I.Q. scores to be in the mild range of mental retardation and diagnosed histrionic personality disorder. At the request of the Secretary, in January, 1986, claimant underwent a fourth evaluation by Dr. David Proefrock, who based on the results of the WAIS-R, found a verbal I.Q. of 70, a performance I.Q. of 62 and a full-scale I.Q. of 64. Unlike Dr. Jackson or Dr. Boyd, Dr. Proefrock did not question the claimant's motivation or the validity of the scores. He found claimant to be functioning in the mild range of mental retardation, in a serious depressive state and suffering from dysthymic disorder and serious social dysfunction.
 
 
 14
 The ALJ considered this psychological evidence and concluded that claimant did not meet the section 12.05C listing. The ALJ discounted the results of the intelligence tests on the basis of Dr. Jackson's statement that the claimant did not perform as well as he could have and that he was poorly motivated and on the fact that the claimant was able to perform unskilled and semiskilled work in the past. On the basis of her own observations and Dr. Jackson's statement, the ALJ concluded that the claimant had an actual I.Q. above 69, despite the fact that the results of three WAIS-R tests showed otherwise.
 
 
 15
 The claimant argues that the ALJ impermissibly substituted her own judgment in place of that of medical experts. Although the Secretary argues that he is empowered to resolve conflicts in the evidence, Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir.1964), there was no real conflict here. Three sets of test results placed the claimant within the I.Q. range of section 12.05C. Rejecting those scores because one of the doctors thought the claimant was poorly motivated and because the claimant demonstrated good ability to engage in work activity, was error. Neither of these were sound reasons for rejecting test scores showing that claimant has an I.Q. that meets the criteria of a section 12.05C listing when the other evidence of record was not inconsistent with the low scores. Neither Dr. Boyd nor Dr. Proefrock questioned the validity of the I.Q. scores. Dr. Boyd remarked that the claimant's concentration was highly variable and may have influenced his test-taking ability but the ALJ did not rely on this statement at all in rejecting the qualifying test scores. Therefore, we conclude that the ALJ erred in finding that the claimant's I.Q. was actually above 69 when the I.Q. tests indicated that it was not. As a result, the ALJ erred in finding that the claimant did not meet the I.Q. criteria of the section 12.05 listing.
 
 
 16
 The Secretary does not argue that claimant does meet the significant function limitation requirement in section 12.05C. He clearly does. He suffers from a history of mitral valve prolapse, labile hypertension and hysterical personality disorder and cannot lift in excess of twenty pounds or engage in prolonged standing or walking. Therefore, the ALJ erred in denying disability benefits under the listing.
 
 
 17
 Having reached this conclusion, we must determine the time period for which disability benefits are due. Although he filed for benefits in 1982, the claimant did not meet the section 12.05C listing until October of 1983. Although additional I.Q. tests revealed that he continued to meet the listing, the record indicates that the claimant began engaging in substantial gainful activity in July of 1984, continued to do so at the time of the supplemental hearing, and is currently doing so. He is entitled to benefits for the period in which he was not engaging in substantial gainful activity. He is not entitled to benefits for a trial work period under 20 C.F.R. Sec. 404.1592.
 
 III.
 
 18
 Accordingly, the judgment of the district court is vacated and the case is remanded to the court with directions to remand to the Secretary with instructions to award benefits from October of 1983 when claimant met the listing until July of 1984 when he returned to substantial gainful activity.
 
 
 19
 VACATED AND REMANDED.
 
 
 
 [1]
 The remand order specified, inter alia, that: a conflict should be resolved in the ALJ's findings as to whether claimant's level of intellectual functioning reduced his ability to perform a full range of sedentary work; vocational evidence be taken if necessary; and a determination made as to whether claimant met the impairments listing of Sec. 12.05C
 
 
 [2]
 In his brief, the claimant also argues that the Secretary failed to carry his burden on proof as to vocational evidence, that the Secretary failed to give proper consideration to his complaints of pain, and that the Secretary's decision exceeded the scope of remand on the magistrate's order. Not only do we find these arguments without merit, but counsel for the claimant conceded at oral argument that her case is whether the claimant meets the 12.05C listing. Thus, that is the only issue which we address